R. J. SAUNDERS & Co., INC. *v.* UNITED STATES (No. 4916)[1]

---

[1] C. A. D. 678.

88 

United States Court of Customs and Patent Appeals, March 14, 1958

*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for appellant.
*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh* and *Alfred A. Taylor, Jr.*, trial attorneys, of counsel), for the United States.

[Oral argument December 5, 1957, by Mr. Jordan and Mr. Welsh]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

RICH, Judge, delivered the opinion of the court:

This appeal is from a judgment of the Customs Court, First Division, C. D. 1846, overruling appellant's protest without affirming the action of the collector.

The imported merchandise consists of a complete electron microscope in a knocked-down or unassembled condition. It was classified by the collector under the *eo nomine* provision for microscopes in paragraph 228 (b), Tariff Act of 1930, and assessed with duty at 45 per centum ad valorem. The importer claims the merchandise is properly dutiable at 15 per centum ad valorem under the first or third provisions of paragraph 353, as modified by T. D. 51802, either as an article suitable for producing, rectifying, modifying, controlling or distributing electrical energy, or as an article having as an essential feature an electrical element or device.

The Government concedes that the collector's classification as "microscopes" under paragraph 228 (b) is erroneous and contends that the merchandise is properly dutiable as a laboratory instrument under paragraph 360 at 40 per centum ad valorem, which contention was upheld by the Customs Court. The issue before us, therefore, is whether electron microscopes are properly classified in paragraph 353 or paragraph 360.

The statutes involved, insofar as pertinent, are:

*Paragraph 353*, as modified by T. D. 51802:

All articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy;

\* \* \* \* \* \*

articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs;

\* \* \* \* \* \* ,

*Paragraph 360*,

Scientific and laboratory instruments, apparatus, utensils, appliances (including surveying and mathematical instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver or platinum, finished or unfinished, not specially provided for, . . .

This court recently decided the same issue in *United States* v. *R. J. Saunders & Co., Inc.*, 42 C. C. P. A. (Customs) 128, C. A. D. 584, the record of which case has been incorporated herein by a stipulation which also provides that the merchandise herein is in all material respects the same as that in the former case. No new evidence has been introduced. The present case is, therefore, a mere reargument of the issue this court decided about three years ago.

The opinion of the Customs Court, after appropriately noting that it is not the province of a lower court to set aside the ruling of an appellate court, said, "Since the facts in the present case are identical with those of the case already decided by our appellate court, we see no alternative but for us to hold that the incorporated case is controlling herein." Judgment was entered accordingly, in effect classifying the imports as "laboratory instruments."

The situation is one appropriately calling for application of the rule of *stare decisis, United States* v. *Mercantil Distribuidora, S. A., Empacadora-Trevino, S. A., The Tupman Thurlow Co., Inc.*, 45 C. C. P. A. (Customs) 20, C. A. D. 667, unless appellant has clearly shown that the prior decision of this court was erroneous. In our opinion, appellant has not done so and this court's prior decision of the question must stand. Our reasons follow.

By way of historical background, this is the third litigation of the classification of electron microscopes involving the same party. The first case was *R. J. Saunders & Co., Inc.* v. *United States*, 28 Cust. Ct. 39, C. D. 1386, wherein the Customs Court held them classifiable under paragraph 353. This holding was in favor of the importer and the Government did not appeal. The second case of the same name, 32 Cust. Ct. 258, C. D. 1610, was decided the same way but on the Government's appeal this court reversed, 42 C. C. P. A. (Customs) 128 C. A. D. 584. The importer filed a petition for rehearing, which was denied, in which it took much the same position it is taking here as to the erroneousness of the decision to which we are adhering.

In the present case, which is the third, the holding sought to be overturned is that electron microscopes are classifiable as *laboratory instruments* under paragraph 360. In opposition to that holding, appellant's argument is based on two points which, in the reverse order from that in its brief, are:

 I. The term "laboratory instruments" in paragraph 360 includes only such instruments as are used chiefly in pure science as distinguished from applied science; and

 II. Electron microscopes are used chiefly in applied science as distinguished from pure science.

It will be observed that one must grant the validity of both of these points to take the electron microscopes out of the class of laboratory instruments.

On the second of the above points, we know of no way in which we could decide, on the record in this case, the question of how electron microscopes are *chiefly* used. To summarize all that appellant has cited from the record on the point, it is that they are used in industry and in the general fields of chemistry, metallurgy and biology; they are used principally in laboratories—industrial, hospital, university and police; they are sold to hospitals, universities, colleges, government agencies and industrial organizations; at Massachusetts Institute of Technology they were used in the metallurgy, physics, chemistry and ceramics departments and for the instruction of students; Eastman Kodak Company used them in physical research; they are used in hospitals and research laboratories for various purposes. This is a very close paraphrase of all that appellant tells us, from which its brief concludes, "All of these uses are clearly in the field of applied science." This, it seems to us, is wishful thinking. Nowhere have we been given a clue which would help answer the riddle of when science is "pure" and when it is "applied" or which kind of "science" or scientific research the various categories of owners of electron microscopes were engaged in. We cannot be expected to assume that merely because an electron microscope is owned by an industrial organization it is being used in "applied science," for such organizations are today heavily engaged in so-called basic research which surely would qualify as "pure science," if that term has any definite meaning. The converse is true and universities engage in subsidized research for Government and for the commercial interest of manufacturers. Only a few years ago the investigations into the inner structure of the atom would surely have rated as pure science, but today the same investigations are so extensively related to practical governmental and commercial applications that the enterprise requires a special government agency for its control. Is it still "pure"? In what category is the instruction of M. I. T. students or medical research in hospitals? It might be sufficient

to rule, as we do, that appellant has not sustained this one point and therefore its contention of error falls, but we shall consider the other point as briefly as possible.

Appellant's assertion that the term "laboratory instruments" in paragraph 360 includes only those used chiefly in "pure" science involves, essentially, a request that we reconsider and reverse the holding this court made to the contrary in the incorporated *Saunders* case, C. A. D. 584, to which we are adhering. Basically the contention is that the court has not been consistent with its decision in *W. L. Conover* v. *United States*, 17 C. C. P. A. (Customs) 324, T. D. 43743. There paragraph 360 of the Tariff Act of 1922 was involved which was like the present paragraph except that it named "Philosophical, scientific, and laboratory instruments" etc. ("Philosophical" was dropped in the 1930 Act as no longer in commercial use.) Appellant insists that the holding of the *Conover* case was—and with this the court is said to be at odds—that all three categories of instruments, philosophical, scientific *and laboratory*, are limited to such as are used chiefly in pure science. We have carefully reviewed the *Conover* case opinion. Not only does it fail to support appellant's view but it clearly refutes it. Involved there were seismographs of a type used in oil field prospecting which were assessed under paragraph 360 as "scientific instruments," which the Customs Court and this court held them to be. The importer protested that they were dutiable under paragraph 372 as "all other machines," arguing that they were used exclusively for commercial purposes and "that only such scientific instruments as are used in pure, as distinguished from applied science, are covered by the provisions of paragraph 360 * * *." Note that this was *appellant's argument*, not the court's statement, and that the appellant did not prevail. The Government contended that they were scientific instruments. The court found the record to be substantially lacking in support for appellant's contentions that the seismographs were suitable only for commercial use and "are not used in scientific laboratories, nor are they used for academic purposes or for teaching, study, or advancement of knowledge or wisdom," and framed its decision in these words:

A seismograph is a scientific instrument. (Funk & Wagnalls New Standard Dictionary.) Surely, if the involved articles are *not* to be classified as scientific instruments, *it must be shown, at least,* that they are *not* devoted exclusively to matters pertaining to pure science, but are successfully, not experimentally, and substantially used in ordinary commercial pursuits. Were these facts affirmatively shown by the record, we might reach a different conclusion. [Emphasis ours.]

As the above quotation shows on its face, the court found that, even accepting appellant's argument as to the construction of the term "scientific instruments," it had failed to take the devices out of the

paragraph. It is obvious that it was wholly unnecessary to this decision to *restrict* the meaning of "scientific" but in the course of discussing the meaning of paragraph 360 the court, in what is clearly dictum, said it was of the opinion that *"scientific"* was intended by Congress to be limited to instruments, etc., used in pure, as distinguished from applied, science. It expressed no view whatever, even in its dictum, as to the meaning of any other terms, in particular the term "laboratory." We can see no inconsistency in the later holding by this court in the incorporated *Saunders* case that the test for compliance with the term "laboratory instruments" is use for laboratory purposes.

It must be conceded to appellant that in *United States* v. *C. H. Stoelting Co.*, 21 C. C. P. A. (Customs) 588, T. D. 46995, and *United States* v. *Arthur H. Thomas Co.*, 22 C. C. P. A. (Customs) 120, T. D. 47105, certain unnecessarily broad and clearly erroneous language was used in discussing the *Conover* dictum which could lead to the conclusion that what was said in the *Conover* case about "scientific" applied to the entire paragraph. We think that, while this was unfortunate, reliance should be placed on the original statement rather than what has been said about it elsewhere. If error has been committed, let it now be made right and others put on notice that it may not be perpetuated. In the *Stoelting* case the court was not concerned with any part of paragraph 360 other than "scientific * * * instruments." It referred to the construction of those specific words in the *Conover* case and held the imported merchandise before it to be scientific instruments used only in pure science and affirmed the Custom Court's classification under paragraph 360. The passage relied on by appellant, saying, "Having in mind, therefore, that only instruments used in pure, as distinguished from applied, science are dutiable under said paragraph 360," appears merely to have been inadvertently broad, in view of what immediately precedes it, and cannot be relied on as a statutory construction by this court. The *Thomas Co.* case, citing the *Stoelting* case, appears merely to have repeated the identical error in the very same words. Again only the scientific instrument provision was involved. Appellant also cited *United States* v. *J. E. Bernard & Co., Inc.*, 30 C. C. P. A. (Customs) 213, C. A. D. 235, but failed to point out wherein it supports its thesis. There certain magnetometers used in oil field exploration and shown not to have any use in laboratories were held to be neither scientific nor laboratory instruments under paragraph 360 but machines under 372.

Finally, appellant devotes several pages of its brief to a discussion of *United States* v. *Adlanco Industrial Products Corp.*, 21 C. C. P. A. (Customs) 249, T. D. 46778, on the theory that this court erroneously took the position that the *Adlanco* case decided that the term "lab-

oratory instruments" meant instruments used for laboratory purposes, whether such use was in the field of pure or applied science. Regardless of what the *Adlanco* case decided, this court clearly expressed approval of that view in its opinion in the incorporated *Saunders* case. If the *Adlanco* case did not establish the proposition, the *Saunders* case did. Appellant would have us believe, however, on the basis of its extensive investigation, that the question of whether the merchandise in the *Adlanco* case was "laboratory apparatus" was not before this court and was not presented to the court by the Government. This is a strange contention in view of what appears in the court's opinion (21 C. C. P. A. at page 250) where it is explicitly stated that the merchandise of two protests "was returned for duty as *laboratory apparatuses* at 40% ad. val. under par. 360, act of 1922" and under another protest "was returned for duty as *laboratory* apparatus at 40% ad. val. under par. 360, act of 1922." It was those classifications the Government was attempting to have sustained but the court said "The evidence establishes that they [the involved diathermy machines] are not used for laboratory purposes at all.", and affirmed the lower court judgment which sustained the protests. It seems reasonable to us to take the *Adlanco* case as standing for the principle that "laboratory instruments" implies use for laboratory purposes. Appellant's difficulty in accepting this would seem to stem from an insistence that the *Conover* case further modifies the term so as to require use in a laboratory *in pure science*. As we have already pointed out, that is not the situation.

On careful reconsideration of all of appellant's arguments, we feel that we are fully justified in saying that no clear error on a material point in this court's opinion in the incorporated *Saunders* case has been established and the decision in that case must therefore stand. Under the rule of *stare decisis*, the judgment of the Customs Court is *affirmed*.

WORLEY, J., concurs in the result.

JACKSON, J., Retired, recalled to participate, was present at the hearing of this appeal but did not participate in the decision.